IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| | ) | CIVIL NO. 22-00074-SOM-KJM |
| GOVERNMENT EMPLOYEES | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING GEICO'S |
| vs. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | AND DENYING DEFENDANTS MARY |
| | ) | RITCHEY AND ALEXANDRA |
| MARY RITCHEY, ALEXANDRA | ) | MCPHERSON'S MOTION FOR |
| MCPHERSON, AND ROBERT | ) | SUMMARY JUDGMENT |
| MCPHERSON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING GEICO'S MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS MARY RITCHEY
AND ALEXANDRA MCPHERSON'S MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION.

Government Employees Insurance Company ("GEICO") seeks a judicial declaration that it owes no duty to insureds Mary Ritchey ("Ritchey"), Alexandra McPherson ("Alexandra"), and Robert McPherson ("Robert") in connection with an automobile collision.  The question before this court is whether an exclusion in an umbrella policy violates public policy and is therefore unenforceable.  Answering this question of first impression requires predicting how the state's highest court would rule on the issue.  The Hawaii Supreme Court's decisions in insurance policy exclusion cases indicate that an exclusion should be invalidated on public policy grounds only if there is a statute setting mandatory requirements for the type of insurance

policy at issue and a public policy deriving from that statute
that the exclusion contravenes.  Both sides in this case
acknowledge that there is no state statute setting mandatory
requirements for umbrella policies.  There is thus no public
policy deriving from a statute that an umbrella policy's
exclusion can contravene.  Accordingly, the court rules that the
resident relative exclusion in the umbrella policy before this
court is not contrary to public policy and is fully enforceable.

## II.        BACKGROUND.

In 2017, GEICO issued Personal Umbrella Policy
No. P6295178 ("the Policy") to Robert and Ritchey.[1]  *See* ECF
No. 43, PageID # 259.  The Policy was effective from December 4,
2017, to December 4, 2018.  *See id*.  The Policy also covered
Alexandra, who is Ritchey and Robert's daughter and was, during
the coverage period, a resident in their home and a minor in
their care and custody.  *See* ECF No. 43, PageID # 259-60.

On October 13, 2018, a car allegedly ran a stop sign
and crashed into the vehicle Robert was driving.  *See* ECF No. 43,
PageID # 256-57.  Robert's vehicle was covered by the Policy.
*See id*.  Alexandra was a passenger in the car during the
collision.  *See id*.  According to Alexandra and Ritchey,

---

[1] For purposes of this motion, the parties have an agreement
detailing the relevant facts at issue in this case.  *See* ECF
No. 43.  The court's account of what occurred is largely based on
the facts presented in that stipulation.

Alexandra sustained extremely serious injuries.  *See id.*; ECF
No. 43-1, PageID # 270.

Following the collision, Ritchey and Robert submitted
claims to GEICO under their personal automobile policy, seeking
coverage for Alexandra's injuries.  *See* ECF No. 46-2, PageID
# 386.  GEICO issued them $300,000 in liability coverage benefits
and $600,000 in underinsured motorist ("UIM") benefits.  ECF
No. 46-2, PageID # 386-87.

Additionally, Robert and Ritchey sought coverage under
the umbrella policy pursuant to the Personal Umbrella Liability
Insurance Agreement.  *See* ECF No. 43-4, PageID # 276.  In Part II
of that agreement, GEICO commits to "pay damages on behalf of an
insured arising out of an occurrence, subject to the terms and
conditions of this policy."[2]  *Id.*  GEICO denied Robert and
Ritchey's claim on the ground that the Policy provided coverage
for damages an insured had to pay to others, but not for any
injury to Alexandra, who was an insured under the Policy.  *See*
ECF No. 43-7, PageID # 286.  The agreement states unambiguously
that GEICO does "not cover damages resulting from . . .
[p]ersonal injury to any insured."  *See* ECF No. 43-5, PageID
# 282; ECF No. 43-7, PageID # 285.

In October 2021, Ritchey filed a First Amended

---

[2] Bold font appearing in the Policy is omitted here and in all
following Policy quotations.

Complaint in state court, on her own behalf and on behalf of Alexandra.[3]  *See* ECF No. 43, PageID # 254.  The complaint asserts tort claims against a number of people and entities, including Robert.  *See id.*

On February 23, 2022, GEICO initiated this federal action requesting a declaratory judgment against Ritchey, Alexandra, and Robert.  *See* ECF No. 1.  GEICO seeks a declaration from this court that the exclusion it relied on to deny liability coverage to Robert under the umbrella policy is enforceable.  *See* ECF No. 33.  GEICO filed this in response to assertions by Ritchey and Alexandra that the exclusion is void as contrary to public policy.  *See* ECF No. 33, PageID # 158.

On February 27, 2023, the parties filed competing motions for summary judgment.  *See* ECF Nos. 44, 45.  GEICO argues that the language of the Personal Umbrella Liability Insurance Agreement makes plain that it provides no coverage for injuries to Alexandra.  *See* ECF No. 45.  According to GEICO, the relevant exclusion is not contrary to public policy and is thus enforceable.  *See id.*

Ritchey and Alexandra argue that, at least as applied to the circumstances of this case, the combined effect of two

---

[3] Alexandra was a minor at the time of the state court filing. *See* ECF No. 43, PageID # 253-54.  Ritchey served as her conservator at that time.  *See id.*  Alexandra has since turned 18, and the conservatorship has terminated.  *See id.*

sections of the Personal Umbrella Liability Insurance Agreement are in conflict with Hawaii's public policy.  *See* ECF No. 44. They take issue with Part III, Section 10 of the Agreement ("We do not cover damages resulting from . . . [p]ersonal injury to any insured") and Part I, Section 7 ("'Insured' means . . . [r]elatives residing in your household as well as a household resident under age 21 in the care and custody of you or your spouse").  *See* ECF No. 43-4, PageID # 275-77.  The combined effect of these provisions is that there is no coverage under the Policy for injuries sustained by a relative residing in the insureds' household or by a resident under the age of 21 who is being cared for by the insureds.[4]  Ritchey and Alexandra contend that, at least when that exclusion results in a lack of coverage for injury to a minor, the exclusion is unenforceable as contrary to state public policy.[5]

III.      **LEGAL STANDARD.**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

---

[4] For the remainder of this order, the court will refer to this exclusion and substantially similar exclusions in other policies as "resident relative exclusions."

[5] Robert did not join Ritchey and Alexandra's motion.  He takes no position as to their motion or GEICO's.  *See* ECF Nos. 52, 53.

P. 56(a); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130,
1134 (9th Cir. 2000).

Summary judgment is proper here, both sides having
stipulated to material facts and having moved for summary
judgment.  The issue before the court on these motions is a
question of law suitable for disposition through summary
judgment.

**IV.      DISCUSSION.**

The sole issue before the court is whether the resident
relative exclusion in the Policy is contrary to public policy.

In this diversity action, the court looks to Hawaii law
to resolve the legal issue.  *See Snead v. Metro. Prop. & Cas.
Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001).  When interpreting
state law, a federal court is bound by the decisions of the
state's highest court.  *See Ariz. Elec. Power Co-op. v. Berkeley*,
59 F.3d 988, 991 (9th Cir. 1995).  In the absence of an on-point
decision by the state's highest court, federal courts attempt to
predict how the state supreme court would decide the issue, using
other decisions by the state's courts, decisions from other
jurisdictions, statutes, treatises, and restatements as guidance.
*Id.*; *see also Burlington Ins. Co. v. Oceanic Design & Constr.,
Inc.*, 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case
raises issues of first impression, our court, sitting in
diversity, must use its best judgment to predict how the Hawaii

Supreme Court would decide the issue.") (quotation marks and brackets omitted).

### A.   The Legal Question in this Case Does Not Merit Certification to the Hawaii Supreme Court.

Ritchey and Alexandra urge the court to certify this question to the Hawaii Supreme Court. *See* ECF No. 44-1, PageID # 296-97. It is certainly within the court's discretion to do so. *See Louie v. United States*, 776 F.2d 819, 824 (9th Cir. 1985) ("Use of the certification procedure in any given case rests in the sound discretion of the federal court.") (quotation marks omitted); Haw. Rev. Stat. § 602-5(a)(2); Haw. R. App. P. 13. But the court uses this power sparingly, so as not to abdicate its duty or overwhelm the state judiciary.

While the particular issue before this court has not been directly addressed by Hawaii's state appellate courts, it does not merit certification. The state courts, including the Hawaii Supreme Court, have heard and decided many cases involving public policy challenges to policy exclusions. Those decisions allow this court to predict how the Hawaii Supreme Court would address the issue. Accordingly, the court need not and does not certify this question to the Hawaii Supreme Court.

### B.   An Insurance Policy Exclusion is Void if it Contravenes Statutory Inhibitions or Public Policy.

Under Hawaii law, insurers have a right to limit and set conditions on their liability, just as individuals do. *See*

7

*Dairy Rd. Partners v. Island Ins. Co.*, 92 Haw. 398, 411-12, 992
P.2d 93, 106-07 (2000).  Such limits and conditions, however,
become invalid if they contravene statutory inhibitions or public
policy.  *See id.*; *see also Damon Key Leong Kupchak Hastert v.
Westport Ins. Corp.*, 421 F. Supp. 3d 946, 957 (D. Haw. 2019).
The question before this court is whether a resident relative
exclusion in an umbrella policy, at least as applied under the
circumstances of this case, is within GEICO's right to impose or
is unenforceable as an infringement of Hawaii's public policy.

Ritchey and Alexandra define "public policy"
expansively, as Hawaii courts have sometimes done.  They contend
that the term "ordinarily includes the notion of the general
public good, as well as the policies enunciated by the
jurisdiction's constitution, common or statutory laws, and
judicial decisions."  *See* ECF No. 44-1, PageID # 291 (*quoting
Salviejo v. State Farm Fire & Cas. Co.*, 87 Haw. 430, 435, 958
P.2d 552, 557 (Haw. Ct. App. 1998)); *see also* 7 Steven Plitt, et
al., *Couch on Insurance* § 101:15 (3d ed.) (2020).  But at least
in the auto insurance context, this definition is cabined by the
manner in which the Hawaii Supreme Court actually ascertains
relevant public policies.  That court does not apply notions of
the general public good to discern public policy.  Rather, when
it speaks of public policies in the insurance context, it is
speaking of principles derived from relevant state statutes.

This matters because Ritchey and Alexandra's argument relies on the proposition that certain public policies, not rooted in any particular state statute, affect all auto insurance policies and should dictate the outcome of this case. This argument is incompatible with the Hawaii Supreme Court's jurisprudence in this area. As GEICO argues, in the insurance context, the Hawaii Supreme Court infers public policy based on the language, purpose, and intent of specific statutory insurance schemes.

Ritchey and Alexandra have struggled to make clear which exact public policy is at issue in this case. In their briefs, they discuss four public policies that allegedly invalidate the resident relative exclusion:

> a.) "ensuring victims of auto collisions are fully compensated," *see* ECF No. 44-1, PageID # 295,

> b.) "ensuring victims are properly compensated for injuries caused by the negligence of others," *see id*. at PageID # 294,

> c.) "fully compensating minor children for injuries sustained in motor vehicle collisions caused by the negligence of others," *see id*. at PageID # 290, and,

> d.) "[f]ully compensating injured family members involved in automobile collisions," *see id*. at PageID # 291.

At the summary judgment hearing, they discussed yet another public policy: allowing minor family members the opportunity to benefit from excess insurance policies.

This court does not here decide whether these purported public policies are righteous or good.  Rather, this court examines whether Hawaii's highest court would likely find that these particular public policies render the resident relative exclusion in the GEICO umbrella policy unenforceable.  It is clear to this court that the Hawaii Supreme Court would not invalidate the exclusion on the basis of such public policies. Some of the public policies discussed by Ritchey and Alexandra have never been expressed by Hawaii's courts.  Others have, but only as reflected in specific state statutes and only as applicable to policies governed by those statutes.  For purposes of this case, nothing in state law suggests that the Hawaii Supreme Court would find any of these public policies relevant or determine that they render the exclusion invalid.

>    C.    **In the Context of Insurance, the Hawaii Supreme Court Only Considers Public Policies that Are Anchored in Specific Statutes.**

The Hawaii Supreme Court has been addressing insurance policy exclusions for decades and, throughout this period, has grounded its public policy concerns in the actual language or legislative history of specific insurance statutes.  It has avoided any consideration of public policies rooted solely in its own perception of the public good.

In *Kang v. State Farm Mutual Automobile Insurance Co.*, 72 Haw. 251, 815 P.2d 1020 (1991), the Hawaii Supreme Court

upheld an exclusion preventing an injured person from receiving UIM benefits if the underinsured car was covered under the same policy as the injured person.  The court upheld this exclusion, concluding that it aligned with Hawaii's public policy of providing "speedy and adequate protection to persons injured in motor vehicle accidents *at the least possible cost*."  *Kang*, 72 Haw. at 255, 815 P.2d at 1022 (*quoting* Haw. S. Standing Comm., Rep. No. 689 (1985)) (emphasis in original).  At the center of the court's discussion was an analysis of the state's no-fault law.  *Kang*, 72 Haw. at 253–58, 815 P.2d at 1021–23.

First, the court determined that a primary legislative intent of Hawaii's UIM statute was the promotion of low-cost optional protection for those injured by underinsured drivers. *Kang*, 72 Haw. at 254-5, 815 P.2d at 1022. Next, the court found that the challenged policy exclusion aligned with that legislative purpose and was therefore enforceable.  *Kang*, 72 Haw. at 260, 815 P.2d at 1025.  Had the court believed that Hawaii had a general public policy in favor of ensuring that victims of auto collisions were fully compensated (or any of the other principles advanced by Alexandra and Ritchey), it surely would have come to a different conclusion, or at least considered that countervailing public policy concern.  Instead, its understanding of public policy derived exclusively from its understanding of the purpose and language of the underlying UIM statutes.

11

Similarly, in *Kau v. State Farm Mutual Automobile Insurance Co.*, 58 Haw. 49, 564 P.2d 443 (1977), the discussion hinges almost exclusively on the language and legislative intent of the uninsured motorist ("UM") statute. *Kau* concerns a policy exclusion that precludes UM coverage when an insured is injured while occupying a car owned by the insured but not covered under the insured's policy. *Id.* at 50, 564 P.2d at 444. The court ultimately deemed the exclusion void not because it contravened a broad public policy of "ensuring victims are properly compensated for injuries caused by the negligence of others," but because the exclusions served "to deny Miss Kau the full protection of the statute." *Id.* at 51, 564 P.2d at 444.

In *Mikelson v. United Services Automobile Association*, 107 Haw. 192, 111 P.3d 601 (2005), the court invalidated two policy exclusions because they limited the plaintiff's "entitlement to underinsured motorist coverage," as set forth by state statute. *Mikelson*, 107 Haw. at 208, 111 P.3d at 617. The Hawaii Supreme Court had previously upheld a similar exclusion in *State Farm Mutual Automobile Insurance Co. v. Fermahin*, 73 Haw. 552, 564, 836 P.2d 1074, 1081 (1992), because the exclusion concerned no-fault coverage, rather than UIM coverage, and thus implicated different statutes and a different set of public policy concerns. 73 Haw. 552, 564, 836 P.2d 1074, 1081 (1992) ("the owned vehicle exclusion contained in the policy is valid

because it is consistent with HRS § 431:10C-305(d) and the legislative intent of Hawaii's no-fault law.").

Two different policy exclusions were in issue in *Methven-Abreu v. Hawaiian Insurance & Guaranty Co.*, 73 Haw. 385, 834 P.2d 279 (1992). The Hawaii Supreme Court found one void and one valid, noting that the two exclusions implicated different statutory regimes. The court upheld a resident relative exclusion applicable to no-fault benefits that was consistent with "the language and legislative intent of Hawaii's no-fault law." *Methven-Abreu*, 73 Haw. at 391, 834 P.2d at 283. The court then invalidated an owned vehicle exclusion in the policy's UM coverage because it contravened a "literal reading of the uninsured motorist statute, coupled with the clear intent of the legislature." *Id*. at 398, 834 P.2d at 286.

Had the Hawaii Supreme Court looked to broad principles of public policy, unmoored from any particular statutory scheme, it might well have invalidated all of the exclusions discussed above. Instead, the court ascertained public policy based on the specific statutory scheme implicated by each insurance policy at issue, sometimes treating the same exclusion language differently as applied to different types of auto insurance.

The parties focus significant attention on *Kaiama v. AIG Hawai'i Insurance Co., Inc.*, 84 Haw. 133, 930 P.2d 1352 (1997). At the hearing on the present summary judgment motions,

13

Ritchey and Alexandra identified *Kaiama* as the case best supporting their argument. *Kaiama* involved a two-year-old child who was killed while riding as a passenger in her grandfather's car. *Id*. at 133, 930 P.2d at 1352. The child's mother requested benefits under the grandfather's bodily injury liability coverage and under UIM provisions. *Id*. at 134, 930 P.2d at 1353. The insurer agreed to pay liability benefits but not UIM benefits, stating that "the policy exclude[s] from the definition of 'underinsured motor vehicle' any vehicle '[o]wned by or furnished or available for the regular use of you or any family member.'" *Id*.

The Hawaii Supreme Court ruled that the family member exclusion contravened public policy and was unenforceable. *Id*. at 137, 930 P.2d at 1356. In discussing the public policies that invalidated the exclusion, the court specifically addressed the public policies of providing "speedy and adequate protection to persons injured in motor vehicle accidents at the least possible cost" and the "public policy in favor of making such coverage available to all uncompensated victims of negligent drivers[.]" *Id*. at 135–37, 930 P.2d at 1354–56 (quotation marks and citation omitted).

The first public policy articulated by the *Kaiama* court is expressly grounded in state statute. The Hawaii Supreme Court looked to the "stated legislative purpose behind the UIM statute"

to discern the public policy of "provid[ing] speedy and adequate protection to persons injured in motor vehicle accidents at the least possible cost." *Id*. at 135, 930 P.2d at 1354 (internal quotation marks and citation omitted). Ritchey and Alexandra do not show that the Hawaii Supreme Court intended for that particular public policy to apply with respect to umbrella policies.

As concerns the second public policy—the "public policy in favor of making such coverage available to all undercompensated victims of negligent drivers"—the *Kaiama* court is not as clear about its source. Thus, Ritchey and Alexandra treat it as generally applicable when automobile accidents occur. *See* ECF No. 50, PageID # 395 ("[I]n *Kaiama . . .* the Hawaii Supreme Court, for public policy reasons, seeks to compensate victims of motor vehicle collisions who might otherwise not receive compensation."). But in arriving at its conclusion that Hawaii law includes a "public policy in favor of making such coverage available to all undercompensated victims of negligent drivers," the *Kaiama* court said it was "persuaded in large part by the decision of the Supreme Court of Washington in *[Tissell]*." *Kaiama*, 84 Haw. at 136, 930 P.2d at 1355.

In *Tissell v. Liberty Mutual Insurance Co.*, 795 P.2d 126 (Wash. 1990), the Washington Supreme Court discerned public policy from state statute. *Tissell*, 795 P.2d at 129 ("the family

15

member exclusion violates the public policy in favor of full compensation which the Legislature established in passing the UIM statute"). It therefore appears that, in relying on the reasoning in *Tissell*, the Hawaii Supreme Court was continuing its usual practice of looking to state statutes as the source of public policies. This court does not read *Kaiama* as announcing a public policy applicable to all insurance policies, including policies not governed by the UIM statutes at issue in *Kaiama* and *Tissell*.

The Hawaii Supreme Court's decisions uniformly identify public policies in the insurance context as found in the text or legislative history of state statutes governing the type of insurance at issue. The Ninth Circuit, when confronted with insurance policy exclusions arising under Hawaii law, has adopted this approach. In *Kim v. State Farm Mutual Automobile Insurance Co.*, 952 F.2d 314 (9th Cir. 1991), the Ninth Circuit upheld an exclusion that precluded an injured person from UIM coverage because the relevant underinsured vehicle was furnished for the regular use of her relative. *Id.* at 317. Like the Hawaii Supreme Court in *Kang*, the Ninth Circuit centered its public policy discussion on the UIM statute and the statutory intent to "favor[] inexpensive UIM options." *Id.* The *Kim* decision includes no mention of the public policies that Ritchey and Alexandra advance (e.g., ensuring that victims of auto collisions

16

are fully compensated, or fully compensating injured family members involved in automobile collisions).  If these public policies were generally applicable, they would certainly have been relevant to the outcome in *Kim*.  *Kim* is consistent with the concept that public policy in the insurance context emanates exclusively from the statutes that govern a particular type of coverage.[6]

> **D.  In the Absence of Statutes Setting Mandatory Requirements for a Certain Type of Coverage, Insurers Can Limit the Coverage They Provide Without Contravening Public Policy.**

This court recognizes that there are often exclusions in insurance policies that have far fewer legislative requirements or restrictions than automobile policies have.  With such policies, the Hawaii Intermediate Court of Appeals' *Salviejo* decision is instructive.  In *Salviejo*, a grandfather took a child to McDonald's.  The child was injured while playing on the

---

[6] Counsel for Ritchey and Alexandra noted during the hearing that Hawaii courts have never expressly stated that this is how public policy is ascertained in this context.  That is true.  Courts in other jurisdictions have been much more explicit.  *See, e.g.*, *Hahn v. Berkshire Mut. Ins.*, 547 N.E.2d 1144, 1145 (Mass. App. Ct. 1989) ("In the present case there is no statute, and hence no public policy deriving from statute, which forbids the instant exclusion in homeowners insurance"); *Weitz v. Allstate Ins. Co.*, 642 A.2d 1040, 1041–42 (N.J. Sup. Ct. App. Div. 1994) ("Unlike his underlying automobile policy whose scope is defined by statute, Mr. Weitz's umbrella policy is defined by the policy's plain language, unencumbered by the statutory requirements for automobile insurance.").  That being said, the lack of an express acknowledgment of this approach has no bearing here given the consistent practice of the state's highest court.

McDonald's playground.  87 Haw. at 431, 958 P.2d at 553.  When sued, the owners of the McDonald's filed a third-party complaint against the child's parents, alleging that their negligence had contributed to the child's injuries.  *Id.* at 432, 958 P.2d at 554.  The parents looked to their homeowner's insurance, but the insurer refused to defend them from the negligence charge, citing the policy's "household exclusion."  *Id*.  That exclusion provided that the policy's personal liability and medical payments coverage did not extend to cases involving injury to an insured, like the injured child.  *Id*.

The parents filed a declaratory judgment action requesting, among other things, that the court find the household exclusion in conflict with public policy and thus unenforceable. *Id*.  The trial court ruled for the insurer, and the child's parents appealed.  *Id*. at 434, 958 P.2d at 556.  The parents argued that the exclusion conflicted with the public policy announced in *Kaiama* of providing "speedy and adequate protection to persons injured in motor vehicle accidents at the least possible cost."  *Id*. at 441, 958 P.2d at 563 (*quoting Kaiama*, 84 Haw. at 135, 930 P.2d at 1354).  Their argument closely mirrors that made by Ritchey and Alexandra.

In *Salviejo*, the Hawaii Intermediate Court of Appeals rejected the parents' argument, stating that "the public policy found to be violated in [*Kaiama*] is not applicable to the

18

household exclusion in Plaintiffs' homeowner's insurance policy."
*Id*.  Arguing that their position survives the *Salviejo* court's
conclusion, Ritchey and Alexandra contend that the *Salviejo* court
only found *Kaiama* inapplicable because *Salviejo* involved
homeowner's insurance.  *See* ECF No. 44-1, PageID # 294.  They
argue that, in contrast, a Hawaii court would find the public
policies in *Kaiama* applicable to their umbrella policy, even if
it is not regulated by the UIM statute.  *Id*.  This argument is
inconsistent with *Kaiama*.

     The public policies discussed in *Kaiama* were not deemed
to apply to all insurance policies, but only to those implicating
UIM statutes.  The *Salviejo* court plainly recognized this.  Its
decision makes explicit that the public policy at issue in *Kaiama*
was a "public policy underlying the UIM statute."  *Salviejo*, 87
Haw. at 441, 958 P.2d at 563.  Further, the *Salviejo* court made
clear that it ascertained public policies from statutes
regulating the type of coverage at issue.  *Id*. ("We are aware of
no statute in Hawai'i which substantively regulates the provision
of homeowner's insurance, or which would evince a legislative
intent to make coverage available for all uncompensated victims
of negligent homeowners."); *see also id*. ("The public policy
underlying the UIM statute obviously does not extend to a
household exclusion provision in a homeowner's insurance
policy.").

*Salviejo* indicates that, when there is no state statute setting mandatory requirements for the type of coverage at issue, Hawaii courts do not invalidate limits on insurance coverage as contrary to public policy.

> **E.   Given the Absence of Statutes Governing the Requirements of Umbrella Insurance Policies, the Resident Relative Exclusion Does Not Violate Public Policy.**

For this court to find the resident relative exclusion in the umbrella policy invalid on public policy grounds, Ritchey and Alexandra would have to show that there is a statute giving rise to a public policy that is contravened by the exclusion. They have not done so.  In fact, during the summary judgment hearing, they conceded that there is no such statute underlying the policies discussed in their briefs.  Accordingly, this court rules that the resident relative exclusion in the umbrella policy is enforceable.

**V.      CONCLUSION.**

As a matter of Hawaii law, the Policy's resident relative exclusion is not contrary to public policy.  The court grants GEICO's motion for summary judgment and denies Ritchey and McPherson's motion for summary judgement.

The Clerk of Court is directed to enter judgment for GEICO and to close this case.

20

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 16, 2023.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*GOVERNMENT EMPLOYEES INSURANCE COMPANY v. MARY RITCHEY, ALEXANDRA MCPHERSON, AND ROBERT MCPHERSON*, CIVIL NO. 22-00074-SOM-KJM; ORDER GRANTING GEICO'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS MARY RITCHEY AND ALEXANDRA MCPHERSON'S MOTION FOR SUMMARY JUDGMENT.